We will hear argument next in No. 2009-3127, Jennings v. Social Security Administration, Mr. Jackman. May it please the Court, I am Norman Jackman and I represent Kelly Jennings, Administrative Law Judge and Colburn Colonel in the United States Army Reserve in this case. Mr. Jennings, Judge Jennings, was notified that he was being called to active duty. At the time, he was Administrative Law Judge at the Atlanta North Office of the Social Security Administration, and he was one of the most productive judges in an office that had tens of thousands of cases at this particular moment. He went on active duty. He served in Kuwait, Iraq, and Guantanamo in the Judge Advocate General's Corps. After three years, he came back, having decided well over a thousand cases, and held 771 hearings during the same time that he was in the Judge Advocate General's Corps. When were these hearings being held? I believe they were held in the U.S. In the late afternoon or the evening or when? He was on leave from Social Security when he was doing military work, and he was on leave from the military when he was doing Social Security work, and he had evidently accumulated a great deal of leave time over a 25-year period. I think the record makes it pretty clear, in fact I think it's agreed, that there were many, many days during this three-year period in which he was going to the base early in the morning and driving back at about 3.30, I think it was 3, 3.30, to the Atlanta Social Security Administration office, and that was when he would arrive at work. Now my question to you is, if he held all these hearings, when did they occur? To my knowledge, the hearings occurred in the U.S. during the time when he was on leave from the military in order to conduct hearings. Not in Guantanamo, not in Kuwait, not in Iraq. Not in the days in which he was. Not at Fort McPherson. I believe that was it. We're talking about the SSA hearings, the thousand, the many SSA hearings. That's right. He arrives at work at the SSA typically around 3.30 in the afternoon at the SSA. He drives over from Fort McPherson, parks his car, goes in, opens the door, goes in the office. Yes. Are there hearing rooms at the SSA offices in Atlanta? This is Judge Jennings. Your Honor, there's five satellite offices that are part of the Atlanta office, and the NLRB ALJ found that I was on leave from- We're trying to get at the question of, when you conduct a hearing, was there anyone present at the hearing besides yourself? Oh, absolutely. And were they in a hall, were they in a lobby, were they in a courtroom, were they in a commissary? Where physically did the hearings take place? Your Honor, they were held in Social Security offices in Augusta, in Gainesville, in Athens, in Atlanta. And at what time of day are they heard? They're heard during the entire day. You might have five hearings, Your Honor. While you were physically at Fort McPherson? No, sir. While I was on leave from the Army, I would go and hold hearings for the Social Security Administration in Augusta, in Athens, in- Okay, I think we have a sufficient answer to the question. Why don't we proceed? After three years of holding these hearings, serving in two different, greatly different positions, traveling the world as ordered by the military, Judge Jennings came back and was confronted with a statement that he had not kept the Social Security Administration advised of his whereabouts and that he had held two positions simultaneously. Is that true or is that not true? That he held two positions simultaneously? He sure did, Judge, and that is permissible by law and it was established over 100 years ago by the United States Supreme Court. One might not hold two civilian jobs simultaneously with the government, but one in the military could hold a civilian job. The case is cited in our brief, U.S. v. Saunders, and there is no contradiction of that. Now, are you familiar with any of the Comptroller General's rulings on that score? Not entirely, Judge, because this Court has held that Comptroller General rulings are not conclusive on the issue, and I have cited that in my brief. What are we to do with a statement like this? Once an employee reports for active military duty, he may not be paid for performing his normal civilian duties since active military duty is incompatible with civilian service with the government. That's the Comptroller General's ruling in 1987. Now, I guess I would have to say that doesn't overrule a U.S. Supreme Court decision for the contrary, and that's outlined in our brief in U.S. v. Saunders. And, of course, with this Court having determined previously that a—excuse me. Excuse me. I have a habit of running dry. Your water is at your side. Thank you. With this Court having decided previously that Comptroller General decisions do not control the law on the subject, with no law, rule, or regulation of any type cited in the initial decision in this case by the NLRB judge who, for some reason, was appointed to hear this MSPB case, there is nothing that Judge Kelly Jennings has been charged with violating. The only testimony was from an unqualified individual who testified as to some unnamed law, rule, or regulation that was supposedly violated. I'd like to turn the Court's attention to the charge against Judge Jennings that he did not keep the Social Security Administration advised of his whereabouts. One thousand, more than one thousand cases? The actual charge was a failure to fully disclose his active duty status.  Yes. Your Honor, here, as soon as he received— Because at the time that he was called away from the country, right? Yes. The agency was aware of the fact that he'd been called away from the country, right? Yes. What they didn't know was that he was on active duty. I'd like to leave this document, which we deliberately blew up, which was served upon the agency immediately upon receipt of military orders and was proven to have been received— Is that document in the record? Yes. Is that in evidence? Yes. This is at page 133 of the appendix. Now, to make sure we're—and we'll address—we probably should have done it at the outset, but we'll address the motion with respect to the appendix at a later time. Yes. But the—to make sure we know what we're dealing with here, is that document one of the documents that was submitted or—submitted—it was sent to the Administrative Law Judge, or was this a document that was actually entered into evidence? This was entered into evidence by the petitioner when he sought a reversal by the MSPB. There are two groups of documents that were sent to the MSPB, one immediately before the hearing and one after the hearing. Was this document in that group, either of those two groups of documents, and not otherwise in the record? It was in the group that was sent after the hearing. All right. Thank you. It was also, Judge—and I'd like to point out— Let me— Hold this up. Let me— I'm sorry. Be sure I—is this one of the anonymous documents? Yes, Judge. Yes. Okay. That's what I want. This is a document any of us would be shocked to be charged with not filing. Where in the world— It's been sent to the agency, but it hasn't been authenticated. It hasn't been entered in evidence. I believe it's been— It would be like, for example, if my wife wrote a letter and just sort of sent it to a court. Not quite, Judge, because there are indications that this was part of the record of the Social Security Administration. At the time, they charged him with not having notified him that he was called to active military duty. The ALJ declined to admit it? Yes or no? That's a yes or no. No. The ALJ never had this submitted to him to be admitted. Okay. Because the agency said, having—let me backtrack. He had a copy of it. Yes. According to the record, he was given a copy. He did not submit it at that time. He didn't get the copy until after the first—he wasn't even told the copy existed until after the first day of hearing. Mr. Jackman, where does this take you? I assume, for purposes of argument, that this document was in the record, and this document clearly showed that your client was being called to active duty for 365 days, effective, you know, 1st of January of 2003. Isn't the short of the matter is, at that time, he was under a promise to appear on an hourly basis at the SSA five days a week as part of his employment there, and he didn't do it? Actually? How does giving someone notice of the fact that you're going to go away and not be in Atlanta, therefore not be able to come from 9 to 5, help you with the charge that you didn't come, unless you were given consent to be away? Well, number one, for the first three months, he wasn't expected in the office because he was given a special assignment, and the agency sent by Federal Express cases for him to decide. There are various pieces of time in the period, but there's a long period of time that isn't accounted for by the specific agreed-upon authorized absences. What, with respect to Judge Clevenger's question, do you say to those? I say that his Chief Judge Spivey was well aware and so testified to the Inspector General's office that he knew that Judge Jennings was on active military duty. And furthermore, Judge Clevenger, let me add something, please. The point of what I'm trying to get at, sir, is that I'm now looking at the failure to follow the agency's time and attendance procedures. It seemed to me as if you have, in essence, admit that your client did not follow the agency's time and attendance procedures that he agreed to follow. Correct. Notification. For substantial periods of time. Notification to the agency of where he was during the entire three-year period. Hundreds and hundreds of pages that the agency said didn't exist. If I'm obligated to go to a certain agency and perform, I work at the Department of Justice, I'm regular time, supposed to be there at 9 o'clock every day. And so what I do is that I call up and I say, I'm not coming. I notify you that I'm not coming. I don't go. Next day I do the same thing. I give you plenty of notice. I'm at home, here's my telephone number, I'm not coming. I'm AWOL. I have signed up and promised to show up at 9 on Monday, Tuesday, Wednesday, Thursday, right? And so someone proposes to remove me because I didn't come to work when I said I was going to come to work. If that were really true, Judge. Well, that helped me because unless I sure had missed something, it looked to me like, except for the periods when it's clear that your client was excused from the nine, what I'll call nine to five duty, except for those periods he's excused. There are lots and lots of other times in this period when he was on active duty when he wasn't excused. To my knowledge, every single time that he was on military duty, he was excused by official leave by the Social Security Administration. When he's over at Fort McPherson? When he is serving there. He has an explicit excuse for not having been on a given day from nine until four or whatever at SSA because he was over at Fort McPherson. Well, he wasn't required to be in the office from, like, nine to five. I think you started by saying, by showing that judges are maybe there. Well, within the band, there's specific hours you're supposed to be around. It's nine-thirty to three or something like that. Right. If you're on a fixed tour of duty. On a fixed tour. Now, they knew he was not on a fixed tour of duty. No, no. That is, what do you mean they knew he was not? He stated, and this is at page 27 of the red appendix cited by the A.J., that he certified that he worked a fixed tour of duty from eight to four-thirty, and that seems to be his position, right? That was what the A.J. credited. If that was so, Judge, would you expect that they would let three years go by, take over a thousand cases decided by him, 771 hearings, and then decide that he wasn't where he was supposed to be? No one is giving Social Security a medal for close supervision. That does not mean that, I mean, if the tellers at the bank are leaving money lying around, that doesn't mean it isn't larceny or robbery if you walk in and take it. That's true. So I don't know that that helps you very much. I submit to the Court that all of these documents that are now available for the Court to see show that he had properly notified the agency of his whereabouts during the three-year period, and furthermore, the agency, charging him with having been out without their knowledge, never produced these records until they anonymously appeared on Friday before the Monday hearing and then did everything they could do to stop them from being admitted to the hearing despite the fact that the very first page shows that from the very beginning he notified them of his call to military duty. They didn't tell him they had them until after the first day of hearing? Have you asked for rehearing and reconsideration by the agency based on these documents that were not and are not now before us? Yes, they were. And? Asked. And what happened? Simply denied. No new evidence, no erroneous interpretation of law, and I should point out to this Court that this Court is not bound to give any deference to the hearing below, but is free to determine this on its merits, and that this Court now has the documents that the hearing official who was an NLRB judge, not a required MSPB judge who decided this case, never had, well, had, but never will. I think you over-advertise the scope of our authority. We're not a trial court. We're not in a position to take documents that weren't admitted. These were admitted. These are admitted. I think we agree. They weren't admitted. They were submitted. Yes, they were submitted to the board. That's a big difference. That's true, and they therefore are in the record. But to charge him with not having notified them of his whereabouts. They're not in the record. You can look at the middle. If we called for the record, which we do quite often from the Merit System Protection Board, they give us every piece of paper in the record that was admitted. They're listed in the certified list. Well, they were submitted, I take it, to the full board in the petition for review stage, but not to the administrative judge, and the full board didn't put them directly as evidence. That's correct, Judge. It's like an excluded piece of evidence in an ordinary trial. It's part of the record in the sense that one may have to look at it to determine whether its exclusion was appropriate, but that doesn't make it part of the reviewable record as such. Yet, what do you make of being charged with not having kept the agency notified of their absence? When the documents are demanded in discovery, the answer is given, they're lost. When the documents show up three days before the hearing anonymously, Judge Jennings isn't even told they have them. The NLRB judge who heard the case is told that they exist. They show it to Judge Jennings or tell him they have it at the end of the first day of hearing, but they tell him he can't use them because they can't authenticate them, and he's stuck without a lawyer to know that if his signature appears on them, they can be admitted. We can spend the rest of the day arguing about what these documents are. Let's go back to the five charges, specific charges. Failure to fully disclose his active duty status. Let's move on. Improper dual employment. Your answer to that is that the Supreme Court case overrides anything that's happened since then. Lack of candor. That's really that interview that he had with Judge Garman, and I'm going to ask the government a few questions about that. All right. Failure to follow the agency's time and attendance procedures. On the record before us, he has admitted in the record that he worked at the military base during the day and then went to the office at 3.30 and spent some time there and then sometimes worked on weekends. That's inconsistent with what the government has submitted, a signed document from him, indicating that he was working regular hours from, I think, 8.30 to 3.30 or 9, whatever it is. I think that's before his military orders, though. I don't think that's after his military orders were given. That – okay. I hear you. All right. And finally, failure to follow the agency's flex-a-place procedures. He was never on flex-a-place, was he? For a brief period of time. Yes, sir. Well, for a very brief period. For three months. Out of the three years, right? Right. Okay. I didn't want to have you sit down until I knew your position on those items. Thank you. We will reserve your full time. We've asked you a lot of questions. Ms. Hossford, I take it, Ms. Hossford, from your reply that you have – your reply to the motion opposition that we're down to the transcripts of the settlement conference as the disputed materials and nothing else in the appendix that's in dispute. Is that correct? That's correct. As Your Honor has noted during Mr. Jackman's argument, the only context in which these so-called anonymous documents are in the record are in the context of the petition for review when Judge Jennings submitted them. May it please the Court, this Court should affirm the MSPB's decision because substantial evidence of record supports each and every one of the five charges that were the basis for good cause for removal of Judge Jennings and Ms. Hossford. The third charge, failure to fully disclose his active duty status, is only relevant if, in fact, there was something unlawful about his active duty status while being a social security ALJ. Correct. So that's a non-charge in terms of any meaning because it's subsumed under the question of whether he was unlawfully holding two jobs. Now, was he unlawfully holding two jobs? Yes, Your Honor, he was unlawfully holding two jobs because long-standing government policy is that active duty military duty is not compatible with a civilian job. There are numerous Comptroller General decisions that establish that, and the Saunders case that Mr. Jackman and Judge Jennings has relied upon is not relevant here. That Saunders case was decided in 1887 under a statute that was unclear about whether or not it precluded a military or civilian employee from earning extra compensation just for one job or whether they were allowed to have two distinct jobs. At that time, the Supreme Court said the statute said that the extra compensation that may not be earned may only be for your present job, but somehow because the statute doesn't preclude it, you could hold two distinct jobs. That's a military-civilian mixture in Saunders? No, in Saunders, I believe it was two civilian jobs. In response to the Saunders decision, Congress amended the statute and made it clear that you could not hold appointment to two separate jobs. This Court's predecessor in the Pack decision, that's 41 Court of Claims 414 in 1906, expressly recognized that the change to the statute was to remedy the problem that had resulted from the Saunders decision. The Saunders decision seemed to allow civilian or military to hold two distinct positions. There isn't any statute that I could find or that you've cited that actually squarely addresses this issue, is there? That's correct. There is no statute that squarely addresses it, but there is no statute that squarely permits an active-duty military officer or enlisted person to have a civilian job. Under those circumstances, how is someone to know what the law is when, in fact, there is no law guiding conduct? Well, first, there are decisions out of both this Court and other circuits that say that when an employee is subject to discipline, there doesn't have to be an explicit rule or prohibition against what they've done. That's the Broussard case, the Meehan case, and Brown v. Navy. However, in this case, the SSA website linked to the OPM guidelines, it stated civilian employees, I mean active-duty military may not also hold a civilian job. Is there any procedure under which newly hired or old hired SSA ALJs are given some sort of manual or information, here's what the rules are that we live by in this agency? Well, the agency's time and record-keeping procedures explicitly say if you're on active duty, you must take military leave, annual leave, or leave without pay. And Judge Garman, who was Judge Jennings' second-line supervisor, testified that all ALJs, when they're hired, are told that they're expected to know the time-keeping procedures. Here, Judge Jennings, when he was out of the country, which was— Admiral Mercer, all ALJs are expected to know what? The time and attendance procedures. I understand the time and attendance procedures, that goes to AWOL and other things, but does that necessarily—were all the AJs told that they can't hold another job? For example, if he had worked at the military from 6 at night until midnight, he would have been able to satisfy your time, the agency's time procedures, right? No, because he wouldn't be taking—when you're on active duty military— Judge Plager was asking you, I believe, about the question of whether or not there's a basis here for saying that you can't have dual employment. So what I took Judge Plager's line of questioning to go at to say, well, fine, if you've got this rule and you make it up, you put it on the basis of a policy based on some frequently asked questions, okay, but do you tell your employees that that's your policy? So can you point to any document of the Social Security Administration that tells some person who's just come back from Afghanistan, who's now going to work—he's a reservist, he's going to work for SSA, by goodness, you know, you can't have—you get called into active duty, you can't have another job with the government, with the military. I cannot point to something in the record that shows that Judge Jennings was given a piece of paper that said you may not— No. Does the SSA have a mechanism in place, either a human resources person who interviews and hires or talks to people or counselors or any mechanism by which an employee would know or have opportunity to learn that they may not hold two jobs? By the way, in that connection, before you answer it, if he wanted to work for the SSA or if an ALJ wants to work regular hours for the SSA and in the evening pump gas in the local gas station, is there an objection to that? Yes. You're not—you mean work in the private sector? Yes. I—there probably is not an objection to that, although I'm not sure. So you can hold two jobs. You— You can moonlight, as we used to call it. At least in the Department of Justice, we have to obtain approval for that. I'm not sure what the SSA policy is, but my understanding is they also have to obtain approval for that. For moonlighting, for holding a second job. Yes. And how do they know that? I mean, how would an employee discover that information? My—I can only—this issue didn't really come up in this case. I can only say that in my agency, we have ethics training that makes it clear what you can and cannot do. But just to get back to my main point, Judge Jennings and all the ALJs are told during their training, they are to be familiar with their time and attendance procedures. The time and attendance procedures specifically state— Assume for purposes of argument that this court found that the improper employment charge was—could not be sustained, no legal basis for it. Then we would throw out the failure to fully disclose his active duty because that would fall, and the lack of candor would probably fall as well since it was connected to that. So then let's assume we sustain the agency on failure to follow agency time and failure to follow flex, right? You'd have to have a remand for redialing the penalty, wouldn't you? Not necessarily. If we knock out three of the charges? As an initial matter, I don't know why the lack of candor charge would be knocked out because when asked specific questions about whether he was on active duty at the same time, he was acting as a full-time SAC— Actually, assume he knocked out the two big ones. This is to say the improper dual employment. And that's the thing. I mean, it's the fact that he had that other job that he wasn't supposed to have that caused him to fail to follow the agency's time and procedure. I'm just saying the reason why we're pressing on this is I think that your adversary is probably going to get a remand if a couple of the legs that are holding up the stool get knocked out underneath it. And that's why we would appreciate your direct dealing with the question of the improper dual employment instead of sort of running around it. Your Honor, I've been direct about the dual employment. It's longstanding government policy. In fact, in the Butterbaugh case— In connection with that, you'll concede that there was no notice given. No notice was required. There was no notice required. If you look at the Brown v. Navy case, a civilian working for the Navy was removed because he had an adulterous affair with a Marine's wife. He said, well, I didn't know that was prohibited. And the court found that lack of warning about consequences isn't necessary when you should know better. Judge Jennings was an administrative law judge. He was a professional. He was hearing cases himself. To say that he didn't know he was supposed to take leave without pay when he was holding two jobs and was supposed to be on active military duty doesn't stand up to scrutiny. He wasn't telling the military that he was working for the Social Security Administration either. He knew it was wrong. Are you finished? Yes, I'm sorry. You may have had a charge of conduct unbecoming, an administrative law judge holding two jobs and not being candid about what he was doing, but I gather that one got dismissed. That one got dismissed, but it had to do with separate conduct relating to Judge Jennings. Okay, well, don't tell us about it. It's in the record. I would also point out that if you look at the Administrative Procedures Act, 5 U.S.C. sections 5532 through 5536, there are statutes that specifically allow a reservist to hold a civilian job when he's serving as a reservist. An active duty military is also allowed to take five days of terminal leave when he comes back from active duty. There is no statute that says that an active duty member of the military may also serve in his civilian job. There are statutes that say clearly that if you're serving active duty in the military, you can't receive compensation or you can't serve in a civilian job, right? That's correct. Well, what the rules say is that at least with respect to JAG officers, they are not allowed to practice law outside of their duty as a JAG officer. So that would at least be if you were working a JAG office and getting paid a JAG office, you'd have some knowledge that if you were overdoing the same stuff for somebody else, there may be a problem. Yes, but also the general policy that precludes civilians from continuing their civilian jobs while on active duty military also works in the converse. When you're on active duty military, you may not hold a civilian job. Let's talk about the lack of candor. Could I ask another question before we move on about this issue? I was a little puzzled about a reference in your brief to the fact that this is not a dual compensation case. It's a dual employment case. First question is a factual one. Does the record reflect whether Mr. Jennings was being paid for both jobs? Yes. The inspector general report that was in the record, the inspector general obtained all the pay records from the military, and it's clear that Mr. Jennings was being paid for both jobs. Then my second question is what are you, I don't want to use the word running away from, but why are you saying, well, it's not a dual compensation case. Why isn't it a dual compensation case? Why wasn't it made a dual compensation case? What is the problem with dual compensation if, to my untutored eye, Section 5536 seems to address dual compensation? Am I missing some subtlety in the statute? There is some subtlety there, Your Honor. Section 5532 says that an individual employee may not be compensated for two civilian jobs. 5536 says that no employee, military or otherwise, may be compensated in excess of the statutory salary to which he's entitled for any service or duty. That could be extended to another job, but it's not on point. The statutory language, and, in fact, that was the language that the Saunders court relied on to say that you could hold two jobs. And that's why the whole statute has been expanded. And although it doesn't expressly address an active-duty military who also holds a civilian job, if you look at the totality of the statute itself, it's crystal clear that reservists may hold civilian jobs, but active-duty military may not. And the comptroller general opinions date back to 1930. And one more question, if I can continue to interrupt Judge Plager. Your opposing counsel says that this court has held that the comptroller general opinions are not binding. With reference, I think he must be referencing the Butterball case. I'm not sure because he didn't cite the case. But why don't we talk about that issue in the Butterball case in particular. In the Butterball decision, the court was looking at Section 6323, which said that reservists are permitted to have 15 days of military leave, and longstanding comptroller general opinions had said that that included weekends and holidays. But those opinions had not taken into account that the statute had changed, and, in fact, the way the government does things had changed, and that civilians don't normally work weekends and holidays. So, therefore, it would appear to be unfair to give different deference to those comptroller general opinions. But Butterball does recognize that comptroller general opinions are entitled to at least Skidmore deference, if they're persuasive. And here, there's no question that somebody who's on active-duty military and is supposed to be serving their country 24-7 should not be holding another job and then not telling either job that he's holding these two jobs and collecting two paychecks. Well, as a general matter, does comptroller general – I don't know whether Skidmore is the right rubric or what, but does a decision of the comptroller general in the absence of any statutory, clear statutory directive constitute – put it this way – does the comptroller general have the authority to make law for agencies with respect to personnel practices in a setting like this? Would one say that that is the law, or would one simply say that's an interesting observation by an agency that's familiar with the Federal Personnel System? I think an agency could rely on the comptroller general opinion. And in Butterball, this Court said that comptroller general opinions are persuasive authority. Okay. Okay, thank you. Now – I'm sorry. You can go ahead with your argument here. Well, I was going to ask you about the lack of candor charge, which I take it is basically key to the interview by Judge Garman. Yes, yes, Your Honor. And Judge Garman was assigned by his superior to ask a set of questions. That's correct. Which he conducted in a 30-minute interview with Judge Auslander present as well as Judge Jennings. I take it – excuse me – allergies. I take it that there was no stenographer or recording made? That is correct, Your Honor. And that the only record of the answers given by Judge Jennings were handwritten notes that Judge Garman made during the course of the discussion. That's correct. And he followed it up with writing of the notes. Which Judge Auslander later said were incomplete or not as he remembered them. In certain instances, yes. So we have Judge Garman versus Judge Auslander versus an after-action report written up by Judge Garman at some later time. I'm troubled by the procedure here. You would have thought at this point they are undertaking a significant investigation, aren't they? At that point, the Inspector General's investigation had already concluded and there was quite a bit of evidence. Quite a bit of evidence and serious charges. Yes. And yet Judge Garman, who was assigned to conduct yet another interview, chooses not to have a stenographer or make a recording? Well, Your Honor, he took... He's a judge. What kind of a process do you consider that on which to base a lack of candor charge? Judge Garman took what the MSPB considered to be adequate notes. And in fact, Judge Jennings testified that he didn't disagree with the characterization of his answers that Judge Garman presented at the hearing. And there were some credibility issues involved there too. Judge Auslander, you know, Judge Cates, the ALJ who heard the case... There's some question about Judge Auslander's role in all of this. He was a union representative and Judge Cates, the ALJ, did not find him as credible as Judge Garman at the hearing. As the Court knows, credibility determinations are virtually unreviewable. How much of the credibility determination with respect to Judge Auslander do you think was predicated on his problem in characterizing his role? You understand what I'm saying? I think that was... Judge Auslander's problem. That was part of it. Was it all of it is the question. Sorry? Was it all of the reason that Judge Cates... He spent a fair amount of time discussing, perhaps because of his labor law background, the status of Judge Auslander and reflecting poorly on Judge Auslander's credibility, he concluded was Judge Auslander's inability to characterize his role with any precision. Was there any other ground for Judge Cates' refusal to credit Judge Auslander? He found that Judge Auslander, at times, his testimony was inconsistent with Judge Jennings because Judge Auslander would say, well, Judge Jennings didn't say exactly that, but when Judge Jennings was asked about it, he said, well, that sounds like something I would say. And then also, Judge Auslander claimed that he was answering for Judge Jennings in some instances and Judge Cates just didn't find that credible either. And it was within the Court, the judge's discretion, to make those credibility determinations. But he can't come up with his own set of facts. And the difficulty in that whole interview is that it was unclear what the actual facts are. And I'm puzzled as to why the government... Anyway, okay, let's move on to the agency's time and attendance procedures. I take it that's a fairly clear, straightforward charge. Yes, it is. That he was supposed to be there from 8 to 4, whatever it is. Some periods he was away on authorized leave, but other periods he was not. Judge Jennings, and it's a PG... How could this have gone on for three years without the SSA either implicitly or explicitly allowing it to go on because he, according to the record, was a particularly good judge? How could this go on without the SSA having condoned it or knowing of it? I mean, where were these people? First, I would just note that the record shows that Judge Jennings was a productive judge. I don't know that there's any characterization that he was necessarily better than other judges. But Judge Spivey testified that he was better than many of the other judges, but that's irrelevant. Go ahead. Judge Spivey, who was Judge Jennings' supervisor, also held a full caseload. These judges were in and out all the time, as Judge Jennings stated today. The hearings were held all over the Atlanta metropolitan area. And remember, these are administrative law judges. They're entitled to a certain amount of decisional independence. They're not subject to performance evaluations. They're not subject to reviews. They're expected to act professionally and do what they're supposed to do. The SSA has offices all over Atlanta? Well, the hearing sites. I think Judge Jennings mentioned four or five of them during Mr. Jackman's presentation. Judge Spivey said that he knew that Judge Jennings was episodically away on military duty. I think he took about a total of seven months sick leave, annual leave, and military leave. During the three-year period that you're talking about. Yes. And you can see that on page 64 of the record, of the government's appendix. It details the times when he took leave. But at other times, he was conducting hearings. He was apparently coming in at night and on weekends, but he was not complying with the time and attendance procedures because he had certified that he'd work from 8 to 4.30, and he admitted he was not. And if he was not working a fixed time, then he was expected to sign in and sign out. And nobody polices that, right? It wasn't policed as closely as it probably could have been. But what the administrative judge found here was that Judge Jennings had concealed the fact that he was working these two jobs, and by keeping his production up, and Judge Spivey also testified he had to have a talk with Judge Jennings because there had been complaints that he was contacting claimants' counsel to get cases that were on the records so that he could boost his production numbers. Concealing the fact that he was working two jobs would only be objectionable if there was something wrong with working two jobs. Right. Which takes us back to that question. I agree. Whether charge two of improper dual. I think the record is clear that the dual employment is improper, so therefore. Let's assume. He didn't follow the time and attendance procedures regardless. Let's assume for the moment, picking up on Judge Clevenger's question, that there's no real question about his failure to follow time and attendance rules. But he did not? The record seems to support that, and the ALJ so found. Would that be a sufficient charge by itself to uphold the ALJ's decision for removal? Under the LaChance line of cases, this court can on its own decide that that is sufficient. The government would submit that it is sufficient. Judge Jennings, it's hard to separate it from the dual employment thing, but he clearly wasn't working the hours he was supposed to, and he wasn't telling anybody that he had another job, and that when he represented that he was working full-time for the agency, that he was actually working full-time, what he alleges is full-time for the agency, and also working full-time for the Army, and then he wasn't telling the Army that he was working full-time for the agency. Without prejudging the question of whether he was improperly paid for two employments, that's an interesting and difficult question on this record, I understand that the SSA has now put him on involuntary leave without pay for that three-year period. That's correct. And is the object to get him to reimburse the SSA? Is that ongoing? What is the status of all of that? The status of that is that the request for payment of the debt that resulted from the retroactive leave without pay was heard by a departmental appeals board within HHS, and the departmental appeals board ruled against Judge Jennings. Now the agency has filed under I think it's section 5514 in the district court for collection of the debt. So that's a question that would be adjudicated in the district court? That's correct. What district court is that in? Northern District of Georgia. So there is a forum that's handling all of that and it's not really any part of our concern. That's correct. Judge Jennings never filed a complaint for constructive suspension or anything. He could have brought a claim for leave without pay before the MSPB. In fact, if you look at USERRA, he may still be able to do that because there's no statute of limitations, but that was not the case that was before Judge Cates. Judge Cates was handling the removal. But there's going to be res judicata on the issues that we're going to decide here.  No, but with respect to the extent. No, I don't mean on the removal. I mean only on the leave without pay. That's a separate, that's a totally separate claim. The removal happens, you know, as of. So would any decision of ours with regard to. You put him on leave without pay though because you say he wasn't supposed to be working. Would any decision of ours. He wasn't supposed to be working because he can't have two jobs. What I'm saying is if we decide, he can't break through. Well, I guess I spoke too quickly. What I was trying to say was if he's going to try to make a USERRA claim, which is what he's saying in his brief on the leave without pay, I'm not, I don't necessarily know that the res judicata, that this decision would be res judicata. That would be an open question. Would any decision of ours with regard to the improper dual employment question be either collateral estoppel or any other, have any other effect on the litigation, the separate litigation for whether or not he's properly on leave without pay and whether he owes a debt to the government. Are those linked in any way? It seems to me it's the same question. It's potentially, but because Judge Cates made it clear that he would not hear the leave without pay claim, I don't, it's possible that the social security, if Judge Jennings attempts to bring whatever decision this court makes into the district court, it's possible that the social security administration would make a res judicata or collateral estoppel argument. I just don't, I don't know. Or that he would. Or that he would. Oh, true. Either way. I mean, if we were to say that dual employment is perfectly okay and that this entire set of claims is boast, then presumably that's pretty much the end of the proceeding in the district court, I would think. If the court were to rule that, it would be at odds with what the Departmental Appeals Board ruled. So. Yeah. Right. No, I'm just saying. We're often at odds with other agencies. Yes. Unless the court has further questions. Well, let me just ask one more question because I know there's going to be a dispute on this, and I just want to make sure that I have your view. And that goes back to the time and attendance point. Your position is that there's this core period in which he's supposed to be in the office, or at least constructively in the office in the sense that he's over at hearing a case somewhere else. And what is the core period? Is it like 9 to 3 or something like that? It's 8 to 4. 8 to 4. Well, I thought that was the full period. There was some core period within that. That's only if you're on flex time. I thought even for the people that are on permanent time, there was a core period. No. Only flex time employees have to be in the office. All right. I'll take your word for it. But in any event, it doesn't really matter to my point. My point is that I want to make sure that I have your position, which was with the exception of the times when he was on military leave, sick leave, annual leave, and I guess he wasn't on leave without pay during this period, correct? Correct. Except for those times which total 7 months. Approximately. Every day that he worked both jobs, which is, again, setting aside short periods that don't amount to too much, every day that he worked both jobs, he was not on leave and he was not in the Social Security office for the required hours, correct? That's correct. And is there anything, next question, is there anything in the documents that were submitted after? Your Honor, can I just amend that? Sure. As Judge Jennings stated earlier, when he had hearings and they had to happen between 9 and 3, which were the hours that he was supposed to be, that he usually spent at Fort McPherson, he took leave from the military to do that. That's what, yeah, okay, okay, but, but, so there were days where he worked the full day, but he was taking leave from the military to do that. That's the only, that's what it says. In other words, he kept himself clean at the military side. Do we have any, do we have anything in the record that indicates what the total amount of leave he was taking from the military was during this period? Your Honor, I don't know that number. All right, then, all right, that's, that's, I have, I have, okay, thank you. No questions. No further questions. Thank you. We'll have rebuttal. Mr. Jackman. One year called to duty with the military. They couldn't possibly think that he didn't let them know that he was working two jobs when they assigned him by Federal Express cases to be decided from the very first time he was called to active duty. There's just no truth. Assuming, Mr. Jackman, the law prohibited him holding two jobs, would the fact that the SSA assigned him work illegally, would that absolve him of any problem? No, no, Judge. If he was prohibited from holding two jobs, he's wrong. I have no problem with that. So it turns on him. Yes. Okay. And I direct the court's attention to dual compensation at page 19 of our brief, which covers it, including a citation to 5 United States Code 5534. And it is clear the petitioner did not engage in improper dual employment. I won't elaborate on that here, but it is on page 19. And I would call the court's attention, because we haven't really been able to concentrate on it. There's a dozen reversible errors in our brief. In practicing for this hearing, I thought to myself, I could close my eyes, go to any page, I'd come up with a reversible error. And I just would like the court to bear that in mind. What is the reversible error that pertains to the charge that he violated time and attendance by, on not every occasion, but on numerous occasions, being obliged to be in his Social Security job at a time in which he was not and he was also not on leave? It seems to me that his leave from the Social Security Administration to go to military and his leave from military to go to Social Security seems to cover that. It covers everything. In other words, what you're saying is that there wasn't a single day in this three-year period in which he was not on leave from either the Social Security Administration or the military. Well, I really can't take that. I understand that. Yes, I agree with that statement. You agree with that statement? Yes. And if the record doesn't support it, then... Then you're wrong and you lose on that count, right? Don't look at him because you can't take testimony. I know that. What? I guess I don't know the answer to that. But I would have to direct the court to page 19, which covers the subject. And as far as the record's concerned, the documents show hundreds of pages... Page 19 doesn't cover the time and attendance problem. It covers the dual compensation issue that you're referring to, or at least it addresses it. My understanding is that the time and attendance is covered the way you've stated. I'd just like to call the court's attention to numerous things. That's a lot of leave. I mean, that's a lot of leave. If you're working two jobs, typically people don't have 50 percent leave. In other words, when my secretary accumulates six hours of leave per pay period, that's not half her time. Now, where's all this leave coming from? Twenty-five years. Twenty-five years of accumulated leave. I don't know if he took no leave during that period of time. I'd be surprised. For confirmation. And all the years he worked for the Social Security Administration. Frankly, I said something last night. You must have been a workaholic. When did you sleep? You've got to wonder. And yet he did this. You're assuming none of that leave expires at the end of the year. I'm assuming that. Yes, sir. I am assuming that. And then the question is, what to do about 1,093 cases that were decided? Would they all be overturned if he wasn't legally deciding? That is not an issue for us. Okay. I asked the court to look in the initial decision for any citation to any authority that shows what he did was wrong. There is nothing in it. I asked the court to consider the Douglas factors, given that what Judge Jennings did was superb as far as the agency was concerned. And if, as Your Honor pointed out, if some of the charges are overturned, does that justify the termination of the judge? These actions were taken against him because of his military service. If what he says is so, then there's a violation of USERRA, and that, of course, is also covered in the brief. That's not an issue in this case, though. There's no USERRA issue in this case. Adjudicated by the administrative law, Judge? Okay. I think you're right. Yeah. I mean, there are a lot of collateral consequences of this. There are a lot of collateral issues around, like this man lying and getting his retirement fund and the rest. I mean, we're limited to reviewing the decision that was made by the American Citizens Protection Board. That's true. Very well. If you have nothing further, that case is submitted. Thank you. Thank you, Judge.